# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| VICTORIA SEGO | ) |
|     Plaintiff, | ) |
| v. | ) Case No. _____ |
| TYSON FOODS INCORPORATED, | ) (Removed from Circuit Court of Buchanan |
| TYSON POULTRY, INC. | ) County, MO, Case No. 20BU-CV03562) |
|     Defendants. | ) |

## DEFENDANT TYSON FOODS, INC.'S NOTICE OF REMOVAL

This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1332 because Defendants Tyson Foods, Inc. and Tyson Poultry, Inc.[1] and Plaintiff are citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

Accordingly, pursuant to 28 U.S.C. § 1441 and § 1446, Defendant Tyson Foods, Inc. files this Notice of Removal from the Circuit Court of Buchanan County, Missouri.

### FACTUAL BACKGROUND[2]

1. On September 25, 2020, Plaintiff Victoria Sego commenced this action against Defendants in the Circuit Court of Buchanan County, Missouri. The Petition is

---

[1] Neither Tyson Foods, Inc. nor its wholly-owned subsidiary, Tyson Poultry, Inc. was ever Plaintiff's employer. Plaintiff was an employee of The Hillshire Brands Company, a wholly-owned subsidiary of Tyson Foods, Inc. **Exhibit C**, Declaration of Morgan Arbelo ("Arbelo Decl."), at ¶ 4.

[2] Defendants treat Plaintiff's allegations as true for purposes of this Notice of Removal only.

captioned: *Victoria Sego v. Tyson Foods Incorporated, Tyson Poultry, Inc.,* Case No. 20BU-CV03562.

2. Defendant Tyson Foods, Inc. was served with a Summons and a copy of the Petition in this matter on October 16, 2020.

3. Defendant Tyson Poultry, Inc. has not been served with a Summons or copy of the Petition, but consents to removal of this case. Thus, the consent to removal requirement of 28 U.S.C. § 1446(b)(2)(A) is satisfied.

4. A copy of the Petition, together with all process and pleadings served upon Defendant Tyson Foods, Inc. in the state action are attached as **Exhibit A**. These documents constitute all "process, pleadings, and orders" served upon Defendants in the state court action as required by 28 U.S.C. § 1446(a).

5. In her Petition, Plaintiff purports to assert four counts against Defendants under the Missouri Human Rights Act ("MHRA") for discrimination based on sex/gender (Count I), discrimination based on race (Count II), illegal retaliation (Count III), and hostile work environment (Count IV). Pet., Counts I-IV.

## GROUNDS FOR REMOVAL -- DIVERSITY JURISDICTION

6. This Court has original jurisdiction under 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states. 28 U.S.C. §§ 1332(a) and 1441(a)-(b). Removal under 28 U.S.C. § 1441(b) is appropriate in this matter because complete diversity of citizenship exists between Plaintiff and Defendants, and neither Defendant is a citizen of Missouri, the state in which this action was brought.

A. *Complete Diversity of Citizenship Exists Between Parties.*

7. For diversity jurisdiction, there must be complete diversity between the parties, which means that no plaintiff may be a citizen of the same state as any defendant. 28 U.S.C. § 1332(a)(1); *Lincoln Prop. Co. v. Roche,* 546 U.S. 81, 89 (2005).

8. Plaintiff resides in St. Joseph, Buchanan County, Missouri. Pet. ¶ 1. Upon information and belief, Plaintiff was, at the time of the filing of this action, and still is, a citizen of Missouri.

9. Neither Defendant is incorporated in nor has its principal place of business in the State of Missouri. Defendant Tyson Foods, Inc. is a corporation, which is a citizen of the state in which it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend,* 559 U.S. 77 (2010) (a corporation's principal place of business normally is the state in which it maintains its main headquarters). Defendant Tyson Foods, Inc. was, at the time of the filing of this action, and still is, a corporation organized under the laws of the State of Delaware with its principal place of business and headquarters in Springdale, Arkansas. **Exhibit B**, Declaration of Brett Worlow ("Worlow Decl."), at ¶ 4. Defendant Tyson Foods, Inc. is thereby a citizen of Delaware and Arkansas.

10. Defendant Tyson Poultry, Inc. is also a corporation. Defendant Tyson Poultry, Inc. was, at the time of the filing of this action, and still is, a corporation organized under the laws of the State of Delaware with its principal place of business and headquarters in Springdale, Arkansas. **Exhibit B**, Worlow Decl., at ¶ 5. Defendant Tyson Poultry, Inc. is thereby a citizen of Delaware and Arkansas.

11. Because Plaintiff is a citizen of Missouri, and neither Defendant is a citizen of Missouri, complete diversity exists between the parties. 28 U.S.C. § 1332.

### A. The Amount In Controversy Exceeds $75,000.00.[3]

12. Pursuant to 28 U.S.C. § 1332(a)(1), diversity jurisdiction requires that the amount in controversy "exceed the sum or value of $75,000, exclusive of interest and costs."

13. Where removal is based on diversity of citizenship and the initial pleading seeks a money judgment but does not demand a specific sum, "the notice of removal may assert the amount in controversy," 28 U.S.C. 1446(c)(2), and a removing defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547, 554 (2014).

14. Plaintiff alleges that, as a direct and proximate result of Defendants' unlawful conduct, she suffered or sustained, and will continue to suffer or sustain, damages including past and future lost wages and benefits, a detrimental job record, career damage and diminished career potential, garden-variety mental and emotional distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, and loss of sleep, pain and suffering, and other nonpecuniary losses. Pet. at ¶¶ 69, 77, 86, 101. Plaintiff also claims entitlement to punitive damages and attorneys' fees. *Id.* at ¶¶ 70-71, 78, 102-103.

15. Plaintiff seeks an unspecified amount of actual, compensatory, and punitive damages, attorneys' fees and equitable relief, including front pay. *Id.* at ¶ 104.

16. Where, as here, a plaintiff's petition seeks to recover an unspecified amount of damages sought, the jurisdictional issue is not whether the pleaded damages *are* greater than the requisite amount, but "whether a fact finder *might* legally conclude that they

---

[3] References to specific damages amounts are provided solely for the purposes of establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Defendants maintain that each of Plaintiff's claims is without merit and that neither one of them is liable to Plaintiff. Defendants expressly deny that Plaintiff is entitled to recover any of the relief sought in her Petition.

4843-4165-5762 v1

4

are." *See Grawitch v. Charter Commc'ns, Inc.*, 750 F.3d 956, 959 (8th Cir. 2014) (emphasis added and internal citations omitted).

17. Plaintiff alleges that she was terminated from her employment on or about November 25, 2019. Pet. ¶ 49. During the forty-one weeks Plaintiff was employed by The Hillshire Brands Company, she earned gross wages in the amount of $27,540.24. Thus, Plaintiff's average weekly gross earnings were $671.71 per week. **Ex. C**, Arbelo Decl., at ¶ 6.

18. Nearly forty-eight weeks have passed since December 17, 2019, the date on which Plaintiff's employment ended, to the date of this removal. Assuming, arguendo, that Plaintiff can recover damages for lost wages, the amount of lost wages in controversy can reasonably be estimated at **$32,242.08** calculated as follows: (average weekly gross earnings of $671.71 per week x 48 weeks).

19. Plaintiff claims that she has suffered or sustained, and will continue to suffer or sustain, damages including past and future lost wages and benefits. Pet. at ¶¶ 69, 101. Because Plaintiff claims continuing lost earnings and benefits, these alleged continuing losses are included for purposes of establishing the amount in controversy. Even extrapolating conservatively to a potential trial date of one year from removal, adding an additional 52 weeks, Plaintiff's alleged lost wages through trial would total another **$34,928.92** (average weekly gross earnings of $671.71 per week x 52 weeks).

20. In addition, at the time of her separation from employment, Plaintiff received employer-sponsored group health coverage at the employer's cost of $104.19 per week and basic employer-sponsored life and AD&D coverage at the employer's cost of $1.46 per week. Thus, the employer's cost for Plaintiff's above benefits totaled at least $105.65 per week or $5,493.80 annually. **Ex. C**, Arbelo Decl., at ¶ 7. Assuming a potential trial date of one year

from removal, Plaintiff's alleged lost benefits through trial would total **$10,565.00** ($105.65 in employer's weekly cost of benefits x 100 weeks).

21. Collectively, Plaintiff's alleged lost earnings and benefits through trial total **$77,736.00** (**$32,242.08** in alleged lost wages to date + **$34,928.92** in additional alleged lost wages through trial + **$10,565.00** in alleged lost benefits through trial = $77,736.00).

22. This figure does not include the emotional distress damages, punitive damages, or attorneys' fees sought by Plaintiff, nor does it include any claim for alleged front pay beyond trial.

23. Thus, although Defendants dispute liability and damages, for purposes of the jurisdictional requirements for removal only, Defendants have a good faith basis to believe that the relief sought by Plaintiff exceeds the jurisdictional minimum. *See White v. United Parcel Service,* No. 4:11CV00707-AGF, 2012 WL 760936, at *3 (W.D. Mo. March 8, 2012) (holding that jurisdictional threshold was met where the plaintiff's lost wages were in excess of approximately $35,000 in light of her plea for emotional distress and punitive damages); *Riffert v. Walgreen Co.,* No. 4:07CV1912-JCH, 2008 WL 495643, at *2 (E.D. Mo. Feb. 20, 2008) (holding that the plaintiff's lost wages, alone, could exceed the amount in controversy requirement by the time of trial, when he had been earning from the defendant approximately $37,674 annually); *Miller v. CEVA Logistics*, No. 07-0644-CV-W-FJG, 2008 WL 130847, at *2 (W.D. Mo. Jan. 10, 2008) (concluding that jurisdictional threshold was met where the plaintiff's lost wages at the time of trial would total less than $40,000 in light of his plea for emotional distress damages, punitive damages, and attorneys' fees); *Hill v. Aldi, Inc.,* No. 4:05CV1412-JCH, 2005 WL 2874692, *2 (E.D. Mo. Oct. 28, 2005) (concluding that jurisdictional threshold was met where plaintiff's lost wages would exceed $75,000.00 by the time of trial).

24. Apart from the lost wages and benefits Plaintiff seeks, the other forms of relief she requests increases the value of her claims. Compensatory damages, including damages for alleged emotional distress, and punitive damages may be considered in establishing the $75,000.00 amount in controversy. *See Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 766 (8th Cir. 2001) (noting that punitive damages and statutory attorneys' fees count toward the jurisdictional minimum for diversity jurisdiction); *Kopp v. Kopp,* 280 F.3d 883, 886 (8th Cir. 2002) (emotional distress and punitive damages count toward the amount in controversy).

25. Plaintiff's allegation that she has suffered and continues to suffer mental and emotional distress and pain and suffering, coupled with her claim for compensatory damages, further increases the value of her claims. *See Riffert*, 2008 WL 495643 at *2.

26. Moreover, although Defendants do not believe that punitive damages are warranted in this case, Plaintiff's plea for punitive damages also moves this case beyond the threshold amount in controversy. *See e.g., Abernathy v. Bank of America, N.A.,* (E.D. Mo. March 16, 2009) (holding that the jurisdictional minimum was met where actual damages were less than $75,000.00 but punitive damages were also sought). Under the MHRA, the sum of actual damages (including damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses) and punitive damages are capped at: (1) the amount of actual back pay and interest on back pay, and (2) $500,000.00, in the case of a respondent who has more than five hundred employees in each of twenty or more calendar weeks in the current or preceding calendar year. RSMO § 213.111.4 (2017).[4]

---

[4] Plaintiff claims that any cap or limitation on Plaintiff's damages that may be imposed by RSMO § 213.111.4 (2017) is unconstitutional. Pet. at ¶¶ 72, 79, 87, 104.

27. This Court may consider awards of emotional distress and punitive damages in prior MHRA cases to decide whether a fact-finder here might legally conclude that Plaintiff's damages are greater than $75,000.00. *See Dowell v. Debt Relief Am., L.P.*, No. 2:07-CV-27 (JCH), 2007 WL 1876478, at *2 (E.D. Mo. June 27, 2007) (denying remand after considering two prior judgments in MMPA cases and noting that "juries are inclined to assess large punitive damages awards in MMPA cases"); *Synergetics, Inc. v. Hurst,* 333 F.Supp. 2d 841, 844 (E.D. Mo. 2004) (holding that defendants established amount in controversy requirement by showing that awards in comparable cases exceeded jurisdictional minimum).

28. Jury verdict awards in claims under the MHRA demonstrate that a finder of fact could legally award damages, including hypothetical punitive damages and attorney's fees, well in excess of $75,000.00. *See Jones v. City of Kansas City, Mo.,* Case No. 1516-CV25112, 2019 WL 610381, at *3 (Mo. Ct. App. Feb. 13, 2019) (attorneys' fees in the amount of $662,862.50); *Stubbs v. Independence Sch. Dist., et al.,* Case No. 1616-CV11175, 2017 WL 6989042, at *1 (Mo. Cir. Nov. 28, 2017) (total damages in the amount of $341,000.00); *D A Miller v. John Bosman, et al.,* Case No. 1416-CV02573, 2016 WL 8315313, at *1 (Mo. Cir. Dec. 15, 2016) (compensatory damages in the amount of $450,000.00, punitive damages in the amount of $20 million, later reduced to statutory cap of $8,383,510.95 punitive damages); *Turner v. Kansas City Pub. Sch.,* 488 S.W.3d 719, 726 (Mo. App. W.D. 2016) (affirming $37,500 punitive damage award); *McGhee v. Schreiber Foods, Inc.,* 502 S.W.3d 658, 675 (Mo. App. W.D. 2016) (affirming $350,000 punitive damage award); *Bowolak v. Mercy East Communities*, 452 S.W.3d 688 (Mo. Ct. App. E.D. 2014) (affirming fee award of $81,500); *DeWalt v. Davidson Surface Air*, 449 S.W.3d 401 (Mo. Ct. App. E.D. 2014) (reversing trial court's reduction of fee award, awarding approximately $130,000 in attorney's fees); *Tate v.*

*Autozoners, L.L.C.,* 363 S.W. 179 (Mo. Ct. App. S.D. 2012) (affirming fee award of $126,000); *Justus v. Missouri Highways and Transportation Commission a/k/a Missouri Department of Transportation a/k/a MHTC,* Case No. 13BU-CV01499 (Mo. Cir. March 24, 2015) (compensatory damage award of $87,790, punitive damage award of $840,000, and attorney fee award of $409,852.50); *McClurg Missouri Highways and Transportation Commission,* Case No. 13BU-CV03069 (Mo. Cir. Dec. 12, 2014) (compensatory damage award of $350,000, punitive damage award of $500,000 and attorney fee award of $266,182).

29. As for Plaintiff's claim for front pay, she could recover an award of two years' salary (*i.e.,* $671.71 average gross weekly wages x 104 weeks = $69,857.84). *See, e.g., Browning v. President Riverboat Casino-Missouri, Inc.,* 139 F.3d 631, 637 (8th Cir. 1998) (affirming two years of front pay).

30. In considering complaints under the MHRA, Missouri federal courts have "legally conclude[d] that the jurisdictional minimum has been met," even when the compensatory damages are less than $75,000, when other damage categories are considered. *See, e.g., Polites v. Home Depot U.S.A., Inc.,* No. 4:13CV143 CDP, 2013 WL 2420674, at *2 (E.D. Mo. June 3, 2013) (denying motion to remand, even though the plaintiff's compensatory damages were only $44,000, as combination of claims for compensatory, emotional, and punitive damages, along with attorneys' fees, would clearly permit finder of fact to potentially award "well in excess of the $75,000 threshold"); *see also White v. United Parcel Serv.,* No. 4:11CV00707 AGF, 2012 WL 760936, at *3 (E.D. Mo. Mar. 8, 2012) (concluding the combination of $35,000 in alleged compensatory damages with alleged emotional and punitive damages was sufficient to meet the jurisdictional minimal requirement).

31. Based on the allegations contained in Plaintiff's Petition and the foregoing, and upon information and good faith belief, the relief sought by Plaintiff — including past and future lost wages and benefits, other compensatory damages for mental and emotional distress and pain and suffering, punitive damages, front pay and attorneys' fees — amounts to more than the $75,000.00 jurisdictional threshold.[5] Accordingly, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2). This action is therefore proper for removal to this Court pursuant to 28 U.S.C. § 1441(a).

## THE OTHER REMOVAL PREREQUISITES HAVE BEEN SATISFIED

32. Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." This Court embraces Buchanan County, Missouri. 28 U.S.C. § 105(b)(3).

33. This Notice of Removal is filed within thirty (30) days of the date Defendant Tyson Foods, Inc. received service of the Petition and, therefore, is timely pursuant to 28 U.S.C. § 1446(b).

34. The United States District Court for the Western District of Missouri is the proper venue to file this Notice of Removal under 28 U.S.C. § 1441(a) because it is the federal district court that embraces Buchanan County, Missouri, the place where this action was filed.

---

[5] Of course, by alleging that Plaintiff might legally recover a judgment exceeding the amount in controversy, neither Defendant confesses any liability, or the appropriate amount of damages if found liable for any part of Plaintiff's claims. Defendants expressly deny any liability in this case, but merely acknowledge what the stakes of the litigation could be. *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 945 (8th Cir. 2012) ("The removing party need not confess liability in order to show that the controversy exceeds the threshold.").

35. Pursuant to 28 U.S.C. § 1446(a), attached hereto and marked as **Exhibit A** is a true and correct copy of all process, pleadings and orders which, as of the date hereof, have been served upon Defendant Tyson Foods, Inc. in the state court action.

36. Pursuant to 28 U.S.C. § 1446(d), written notice of the removal of this case is being served on counsel for Plaintiff, and a Notice of Filing Notice of Removal promptly will be filed with the Clerk of the Circuit Court of Buchanan County, Missouri.

37. Defendant Tyson Foods, Inc. reserves the right to amend or supplement this Notice of Removal, and reserves all rights and defenses, including those available under Federal Rule of Civil Procedure 12.

38. If any question arises as to the propriety of the removal of this action, Defendant Tyson Foods, Inc. respectfully requests the opportunity to present a brief in support of its position that the case is removable.

WHEREFORE, Defendant Tyson Foods, Inc. states this action is properly removable and respectfully notifies this Court, Plaintiff, and the Buchanan County Circuit Court that this action has been removed to the United States District Court for the Western District of Missouri.

Date: November 16, 2020

SHOOK, HARDY & BACON, LLP

By: /s/ Carrie A. McAtee
Carrie A. McAtee, #54949
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
Email: cmcatee@shb.com

ATTORNEYS FOR DEFENDANTS TYSON FOODS, INC. AND TYSON POULTRY, INC.

## CERTIFICATE OF SERVICE

    I hereby certify that on this 16th day of November, 2020, a copy of the foregoing document and all exhibits thereto was served via email on the following:

Rachel C. Rutter
RUTTER LAW FIRM, LLC
201 SE 1st Street
Lee's Summit, MO 64063
Telephone: 816.337.0684
Rutter.c.rachel@gmail.com

*Attorneys for Plaintiff*

              /s/ Carrie A. McAtee
              ATTORNEY FOR DEFENDANTS